IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| PHIL LEE MINCEY, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-58 |
| v. | |
| BEVERLY BROWN, | |
| Defendant. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Dr. Beverely Brown's Motion for Summary Judgment. Doc. 22. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis status* on appeal.

## BACKGROUND

Plaintiff brought this 42 U.S.C. § 1983 action relating to his medical treatment while incarcerated at Smith State Prison. Doc. 1. After conducting the requisite frivolity review, the Court dismissed all of Plaintiff's claims against Augusta University and Warden Kilpatrick and all claims against Defendant Brown in her official capacity. Docs. 11, 16. Thus, the only claim that remains pending is a deliberate indifference claim against Defendant Brown in her individual capacity. In his Complaint, Plaintiff alleges Defendant Brown violated his Eighth Amendment rights by denying him pain medication. Doc. 1 at 5–6. Plaintiff sues Defendant Brown for monetary damages. Id. at 6.

## UNDISPUTED MATERIAL FACTS[1]

Defendant Beverly T. Brown, M.D., MPH, worked as a physician at Smith State Prison from June 28, 2018 to June 4, 2020.  Doc. 23 at 1.  During that time, Dr. Brown was not a government employee but an independent contractor with an agency called Consilium Staffing, which staffed various correctional facilities through a contract with Augusta University Georgia Correctional Healthcare.  Id. at 2.  Plaintiff was an inmate at Smith State Prison for part of the time Dr. Brown was a physician at the facility.  Id.  In February 2019, Plaintiff had a prescription for 900 mg of Gabapentin twice a day for chronic pain in his back.  Id.  Plaintiff was only one of about five inmates at Smith State Prison who was still being prescribed Gabapentin at the time.  Id.  The medication had been phased out of the inmate population for several years due to its negative side effects and high abuse potential.  Id.  On February 12, 2019, Mary Lane Cooper, a physician's assistant ("PA") with over 20 years of experience in correctional medicine, saw Plaintiff for a medical request.  Id.  Plaintiff indicated he needed his Gabapentin prescription reordered.  Id.  PA Cooper ordered a routine blood serum level test, made a referral to a physician for review, and noted Plaintiff had a medical history of Gabapentin abuse.[2]  Id.  Plaintiff's labs were drawn on February 20, 2019.  Id.  The results from the labs revealed Plaintiff's blood levels were less than 0.5 mcg/ml, i.e., negligible.  Id.  This reading is

---

[1]  Plaintiff has not specifically admitted or denied Defendant's statement of facts, nor has Plaintiff submitted his own statement of facts for the Court's consideration.  Thus, all of the material facts Plaintiff has not addressed are deemed admitted under this Court's Local Rules.  Local R. 56.1.  The Court notes Plaintiff's Complaint is a sworn Complaint.  Id.  The Court expressly warned Plaintiff he "may not rest on the allegations in [his] pleadings alone" for summary judgment purposes.  Doc. 24.  However, the Court still considers the Complaint as evidence because it is a sworn Complaint Plaintiff cites to in his summary judgment brief.  After reviewing Plaintiff's Complaint and briefing, the Court concludes Plaintiff does not dispute most of the facts presented by Defendant.  It appears the only disputed fact is whether Plaintiff refused the medications and treatments offered by Dr. Brown.  Doc. 30 at 8.

[2]  Plaintiff states he "never had a history of Gabapentin abuse."  Doc. 30 at 8.  However, based on the briefing submitted, Plaintiff does not dispute the records stated—albeit incorrectly in his opinion—he abused Gabapentin.  He also does not dispute Dr. Brown believed this based on her review of the records.

inconsistent with someone who should have been taking 1800 mg of Gabapentin per day and indicated Plaintiff was not taking his medication as prescribed. Id.

Upon further review of Plaintiff's medical records on February 27, 2019,[3] Dr. Brown found documentation of Plaintiff's abuse of Gabapentin, refusal of taking prescribed medications, refusals of mental health treatments, refusals of other medical treatments, and references of suspicions of diversion of medications.[4] Id. at 3. Dr. Brown's review of Plaintiff's medical record, coupled with Plaintiff's blood serum levels, indicated to her Plaintiff had not been taking his medication as prescribed. Id. Dr. Brown decided to restart Plaintiff at a lower dosage of Gabapentin. Id. She did not discontinue the prescription abruptly since that could also pose serious risks. Id. This was part of her plan to wean Plaintiff off Gabapentin while she consulted with the pharmacy and State Medical Directors regarding alternate pain medication and available non-medical methods for pain relief that would be effective for Plaintiff's symptoms. Id.

Over the next several weeks, Plaintiff made multiple sick call requests and Dr. Brown continued to evaluate him. Id. Plaintiff demanded he be prescribed Gabapentin at 900 mg twice per day. Id. On March 27, 2019, Dr. Brown ordered another blood serum level test for Plaintiff to test the level of Gabapentin in his blood. Id. The level again returned in the range of less than 0.5 mcg/mcl, a negligible amount. Id. On April 4, 2019, Dr. Brown discussed Plaintiff's care

---

[3] Plaintiff states he was never examined by Dr. Brown prior to her discontinuing his Gabapentin prescription. Doc. 30 at 1. It is unclear whether Plaintiff disputes seeing Dr. Brown on February 27, 2019. However, Defendant has submitted a "Medical Encounter Form" summarizing Plaintiff's apparent visit with Dr. Brown on that date. Doc. 22-9 at 16. Plaintiff acknowledges he saw Dr. Brown numerous other times, however, because he states he informed Dr. Brown over 20 times the medications she prescribed did not work. Doc. 30 at 5.

[4] Plaintiff vaguely accuses Dr. Brown of falsifying medical records related to his improper use or diversion of medications. The allegations are conclusory and unsupported by any evidence and do not create any genuine dispute of material fact.

3

with the Regional Medical Director, Dr. Edward Aikens, who was Dr. Brown's supervisor. Id. at 4. The two discussed the absence of a serum blood level during a therapeutic blood level lab analysis, as well as Plaintiff's documented records of Gabapentin abuse. Id. Dr. Aikens recommended to discontinue Gabapentin altogether. Id. Despite being informed of the administrative decision to discontinue Gabapentin, Plaintiff persisted with his demands for Gabapentin at the 900mg twice per day level. Id. At no time during these visits did Dr. Brown ever observe Plaintiff in distress or note any physiological manifestation of the pain of which he complained. Id.

In August 2019, Dr. Brown submitted a formulary exception request to the pharmacy and Therapeutic Committee for prescribing Lyrica. Id. Lyrica can only be prescribed by written authority from the Director for Medical Services, Billy Nichols, M.D. Id. Upon review, Dr. Nichols denied Dr. Brown's request, citing that Plaintiff was not a candidate for Lyrica considering his history of abuse and non-compliance regarding medication prescription. Id. In September 2019, Dr. Brown prescribed Plaintiff 100 mg of Tegretol (a medication Plaintiff had taken in the past and claimed was effective) twice a day. Id. Dr. Brown advised Plaintiff he would need to start at a lower dosage and undergo lab tests to test the efficacy of the treatment. Id. at 5. Plaintiff refused to undergo any lab tests because the dose was not high enough. Id.

Dr. Brown prescribed every available alternative to Gabapentin to Plaintiff including Tegretol, acetaminophen, Voltaren gel, and physical therapy. Id. All these methods were alternatives offered by the Medical Director and Statewide Pharmacist to correctional physicians in the State of Georgia. Id. Between February 2019 and June 2020, Plaintiff was evaluated by a medical professional at Smith State Prison at least 43 times. Id. During her tenure at Smith State, Dr. Brown personally evaluated Plaintiff over 20 times and attempted to help him manage

4

his pain with both medical and therapeutic means, but Plaintiff insisted on high dose prescriptions of Gabapentin or Tegretol, citing only his past prescriptions.  Id.  Gabapentin was removed from the approved formulary of medication altogether in May 2020 and is no longer an approved medication to administer to any inmate.  Id.

## ANALYSIS

### I.   Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks

evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.     Deliberate Indifference**

**A.     Legal Standard**

The United States Supreme Court has interpreted the Eighth Amendment Cruel and Unusual Punishment Clause to prohibit "deliberate indifference to serious medical needs of prisoners."  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)).  To prove a deliberate indifference to medical treatment claim, a plaintiff must demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal connection between the constitutional violation and plaintiff's injury.  Id.  The first element is an objective inquiry.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quotation and citation omitted).

The second element is a subjective inquiry.  Id.  To show defendant's deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a disregard of that risk; (3) by conduct that is more than mere negligence."  Melton, 841 F.3d at

6

1223.  Conduct that is more than mere negligence can include grossly inadequate care, a decision to take a less effective but easier course of treatment, or completely cursory medical care that amounts to no treatment at all.  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  A mere medical malpractice claim does not constitute deliberate indifference to a serious medical need.  Estelle, 429 U.S. at 104.  Medical prison officials are entitled to utilize their medical judgment when treating inmates.  See Estelle, 429 U.S. at 107.  Accordingly, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" also does not amount to a constitutional violation.  Melton, 841 F.3d at 1224 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).  Prison officials cannot be held liable under the Eighth Amendment when they provide an inmate with treatment, but the inmate simply prefers a different mode or method of treatment.  Sifford v. Ford, 701 F. App'x 794, 795 (11th Cir. 2017).  Relatedly, a doctor's decision to prescribe a certain type of medication over another is generally a matter of medical judgment that cannot subject the doctor to § 1983 liability.  See Bauer v. Kramer, 424 F. App'x 917, 919 (11th Cir. 2011) (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)).

**B.     Analysis**

Defendant Dr. Brown argues Plaintiff cannot prove either the second or third elements of a deliberate indifference claim.  Doc. 22-1 at 10–13.  Regarding the second factor, Dr. Brown asserts Plaintiff cannot show she was deliberately indifferent simply because she did not renew Plaintiff's past prescriptions for Gabapentin.  Id.  Dr. Brown states she continually prescribed alternative medications and treatments for Plaintiff's pain, even though she determined Gabapentin at a higher dose was no longer a viable option for Plaintiff.  Id. at 12.  In support of this argument, Dr. Brown points to her affidavit, which summarizes the course of treatment she

7

provided. Doc. 22-3. Regarding the third factor, Dr. Brown argues Plaintiff cannot show her actions caused him further pain because he refused to comply with the alternative treatment options she recommended. Id. at 12–13.

Plaintiff has not shown Dr. Brown was subjectively deliberately indifferent to his pain and back condition. Plaintiff does not dispute Dr. Brown saw him on over 20 occasions or that he received treatment at the medical department on over 40 occasions for his condition. Doc. 23 at 5. Plaintiff does not dispute Dr. Brown continued to prescribe him Gabapentin at a lower dose and then prescribed numerous other treatment options, including pain medication, when Gabapentin was no longer an option. Given these undisputed facts, Plaintiff cannot show an Eighth Amendment violation. The sheer amount and different types of treatment offered by Dr. Brown demonstrate Dr. Brown did not deliberately deny Plaintiff medical treatment. Instead, Plaintiff's claim amounts to his assertion he should have received a specific medication at the specific dose he desired. This does not violate the Cruel and Unusual Punishment Clause because specific prescriptions are a matter of medical judgment. Bauer, 424 F. App'x at 919. Plaintiff's arguments reveal he is merely dissatisfied with the course of treatment Dr. Brown developed for him, which does not violate the Eighth Amendment. Melton, 841 F.3d at 1224.

Plaintiff states two different doctors prescribed him Gabapentin 900mg, but Dr. Brown did not follow these recommendations. Doc. 30 at 5. However, Plaintiff has not submitted any evidence to support this assertion. Even assuming this is true, Dr. Brown's decision to prescribe a lower dose of Gabapentin or another pain medication over Gabapentin would, at most, amount to negligent conduct. Mere medical malpractice does not violate the Eighth Amendment. Estelle, 429 U.S. at 104. Thus, Plaintiff's argument Dr. Brown did not honor the recommendation of these two doctors is insufficient to create a genuine dispute for trial.

Plaintiff also argues prison medical staff violated prison policy by putting the medication in a crushed form under his door into an unlabeled paper cup. Doc. 30 at 2. In support of this argument, Plaintiff points to the Self-Administered Medication Administration ("SAM") Program Policy, which requires inmates to keep their medications in a blister pack until administered, and the Non-SAM Medication Administration Policy, which requires inmates to take their medication in front of medical staff. Doc. 30-2. Plaintiff has submitted two witness statements from fellow inmates indicating his medications were given to him as he describes. Doc. 30-1. Plaintiff states he never met with Dr. Brown prior to prison staff distributing his medication in this manner. Plaintiff suggests Dr. Brown covered up the mistakes in medication distribution committed by various nurses. Plaintiff has not shown medical staff violated any specific prison policy. Moreover, the policies identified by Plaintiff appear to only apply only to inmates and not medical staff. Regardless, the policies and inmate statements are insufficient to create a genuine dispute of material fact sufficient for Plaintiff to survive summary judgment. Even assuming the nurses violated prison policy and Dr. Brown acted to cover it up, Plaintiff does not dispute Dr. Brown saw him on more than 20 occasions and prescribed him various medications and treatments for his condition.[5] Thus, Plaintiff cannot show Dr. Brown's actions violated the Constitution. Therefore, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment. Because Plaintiff cannot prove the second element of a deliberate indifference claim, the Court delcines to address whether Plaintiff can prove a causal connection between Dr. Brown's allegedly unconstitutional actions and his injuries.

---

[5] Additionally, even if Dr. Brown took steps to hide this practice after it occurred—an allegation not supported by any evidence—the fact would not be material to whether Dr. Brown was deliberately indifferent to any of Plaintiff's serious medical needs.

At the end of his summary judgment brief, Plaintiff states he wishes to move for summary judgment himself. Doc. 30 at 9. Because Plaintiff cannot show a genuine dispute of material fact for trial holding the evidence in the light most favorable to him, he also cannot show he is entitled to judgment as a matter holding the evidence in the light most favorable to Defendant. Fed. R. Civ. P. 56(a). Accordingly, I **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and the summary judgment standards, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis status* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

11

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 28th day of June, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA